NATIONAL SURETY COMPANY v. STATE TRUST & SAVINGS BANK.

No. 5441.   Decided June 25, 1930.
(29 S. W., 2d Series, 1027.)

354

*Bell & Clark,* for appellant.

On first certified question: State v. Broadway National Bank, 282 S. W., 194; State v. Merchants National Bank of St. Paul, 177 N. W., 135; Shipman v. Bank of New York, 27 N. E., 371, 126 N. Y., 318; Article 5932, Sec. 9, Subdivision 3, 1925 Texas Statutes; State Bank and Trust Company v. Linely, 149 S. W., 211, 194 S. W., 937; Goolsby v. Manning, 270 S. W., 936; City National Bank v. Harris, 196 S. W., 859; 2 Corpus Juris, page 428, Section 16; Donnan v. Adams, 71 S. W., 580; Equitable Life Insurance Society of the U. S. v. National Bank of Commerce in St. Louis, 181 S. W., 1176; Merchants Bank v. Prudential Insurance Co., 84 S. W., 101; Los Angeles Investment Co. v. Home Savings

Bank of Los Angeles, 182 Pac., 293; 43 Corpus Juris, page 892, Sec. 1627; 43 Corpus Juris, page 900, Sec. 1645.

On second certified question: The equitable principle mentioned in said certified question is not applicable to the facts of this case because the employment of A. M. Lyles as foreman of one of the sewer crews did not constitute such agency as is contemplated by said rule. State v. Broadway National Bank, 282 S. W., 194; 21 C. J., p. 1172; 2 C. J., p. 428, Sec. 16; Donnan v. Adams, 71 S. W., 580; State v. Merchants National Bank of St. Paul, 177 N. W., 135; Los Angeles Investment Co. v. Home Savings Bank of Los Angeles, 182 Pac., 293.

It does not apply where the wrong is accomplished through the instrumentalities of a criminal act. State v. Broadway National Bank, 282 S. W., 194; 21 C. J., 1172; State v. Merchants National Bank of St. Paul, 177 N. W., 135; Los Angeles Investment Company v. Home Savings Bank of Los Angeles, 182 Pac.; 283; Hill v. C. F. Jewett Pub. Co., 154 Mass., 172; Walsh v. Hunt, 20 Cal., 46, 52 Pac., 115, 39 L. R. A., 697; Maxville National Bank v. Clark, 51 Iowa, 264, 1 N. W., 491; Holmes v. Trumper, 22 Mich., 427; Graham v. Sinderman, 213 N. W., 200; Atherton v. Michigan Guaranty Corp., 211 N. W., 83; Nash v. Moors, N. Y., 165 App. Div., 67, 151 N. Y. S., 86, 98; Worrall v. Gheon, 39 Pa., 388; Schoolfield v. Lordsborough, A. C., 514; England v. Bank of England, 21 Q. B. D., 160; Baxendah v. Bennett, 3 Q. B. D., 525.

The rule does not apply because the equities due the City are at least equal to those due the bank, and between equal equities the law will prevail, the controlling principles of Law being: (1) obtaining the money by the bank from Percy Davis by virtue of its own indorsement it guaranteed all previous indorsements and must fulfill its guarantee; and (2) having obtained the money under mistake of fact, it must return it.

*Under First Rule of Law above stated:* City Bank of Houston v. First National Bank of Houston, 45 Texas, 203; First Natl. Bank of Winnsboro v. First Natl. Bank of Quitman, 299 S. W., 856, 294 S. W., 324; Farmers Natl. Bank of Augusta v. Farmers and Traders Bank of Maysville, 166 S. W., 986; State v. Merchants Natl. Bank of St. Paul, 177 N. W., 135; Wells Fargo & Co. v. Simpson Natl. Bank, 47 S. W., 1024; Miller v. Stewart, 214 S. W., 565; United States v. Natl. Exchange Bank, 29, 214 U. S., 302, 53 L. Ed., 1006, 16 Ann. Cases, 1184; State v. Broadway Natl. Bank, 282 S. W., 194; Lively v. Guaranty State Bank & Trust Co., 194 S. W., 937.

*Under Second Rule of Law above stated:* City Bank of Houston v. First Natl. Bank of Houston, 45 Texas, 203; State v. Broadway Natl. Bank, 282 S. W., 194; Farmers Natl. Bank of Augusta v. Farmers & Traders Bank of Maysville, 166 S. W., 986; McClendon v. Bank of Advance, 174 S. W., 203.

The rule does not apply because the agency of the City of Dallas wherein it is sought to show the fraud originated, if any such agency existed, in no way contributed to or induced the acts of appellee Bank in paying the money to Lyles. Guaranty State Bank & Trust Company v. Lively, 194 S. W., 937; Wells Fargo & Co. v. Simpson National Bank, 47 S. W., 1024; First National Bank of Quitman v. Wood County, 299 S. W., 856; State v. Broadway National Bank, 282 S. W., 194; State v. Merchants National Bank of St. Paul, 177 N. W., 135; Shipman v. Bank of State of New York, 186 N. Y., 318, 27 N. E., 371.

The fact that the City of Dallas is a municipal corporation created for the benefit of the public and operates only to discharge its public duties would remove it from any operation of said rule in favor of the appellee, a private banking corporation. 43 C. J., page 892, Sec. 1627, page 900, Sec. 1645; State v. Merchants Bank of St. Paul, 177 N. W., 135; Burnside Land Co. v. Connerly and Lee, 291 S. W., 409.

*Webster Atwell,* for appellee.

The warrants in this case, having been issued by the city, at the instance of its agent and employee, A. M. Lyles, and being made payable to fictitious and nonexisting persons, the City of Dallas is visited with notice that the warrants were so drawn, payable to fictitious and nonexisting persons, and, therefore, in law, the warrants are considered to be payable to bearer, and the appellee obtained good title to the same, and was in no way liable to the City of Dallas, and, therefore, in no way liable to the appellant, which stands in the shoes of the City. Gleason v. Seaboard Air Line Ry. Co., 49 Sup. Ct., 161; Litchfield Shuttle Co. v. Cumberland Bank, 183 S. W., 1006; Bartlett v. First Nat. Bank, 93 N. E., 337 (340); Equitable Life Assurance Society v. Nat. Bank of Commerce, 181 S. W., 1176.

Because the City of Dallas reposed such trust in Lyles, to the extent that he was authorized to make up his daily time sheets for laborers whom he employed, and that the pay-rolls were made from these time sheets, and because the City of Dallas issued the warrants based upon the pay-rolls and delivered to Lyles for delivery to those

whom he had placed upon his time sheet, the City of Dallas made it possible for Lyles to consummate his fraud, and, therefore, the rule where one of two innocent parties must suffer, he through whom the loss occurred must bear it, applies in this case. Day v. Brenton, 71 N. W., 538; Heavy v. Commercial Nat. Bank, 75 Pac., 727; United States v. Nat. Exchange Bank, 45 Fed., 163; Iron City Bank v. Fort Pitt Nat. Bank, 28 Atl., 197; Phillips v. Mercantile Bank, 23 L. R. S., 584, 35 N. E., 982; 3 R. C. ,L., Sec. 209, p. 999.

Mr. Presiding Judge HARVEY delivered the opinion of the Commission of Appeals, Section A.

In this case the Court of Civil Appeals for the Fifth District has submitted the following certificate containing certified questions:

"There is pending on motion for rehearing in the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas the following numbered and entitled cause: No. 10330, National Surety Company, appellant v. State Trust & Savings Bank, appellee, in which the opinion rendered by said court, reversing and rendering said cause, is not agreed to by one of the judges of said court, a dissenting opinion being filed on questions of law vital to the determination of the rights of the parties, presented by the appeal of said cause, and in accordance with article 1852, R. C. S. 1925.

### "STATEMENT OF THE CASE.

"The appellant, National Surety Company, plaintiff in the court below, filed its suit against appellee, State Trust & Savings Bank, defendant, to recover the sum of $1,020.80, and interest thereon, on the ground, that said appellee had become and was legally obligated to pay said sum to the City of Dallas, said appellee having collected said sum of $1,020.80 from said city on various warrants forged against it by one of its employes, which sum appellant alleged it was entitled to recover against appellee, under the claim that it had become and was subrogated to the rights of said city.

"For cause of action appellant alleged:

"That it was a corporation duly organized and existing under the laws of the State of New York, and authorized to do business in the State of Texas, and engaged in the surety business, including the issuance of forgery bonds for the protection of their named obligees, and any bank, depository or treasurer with which such obligees carried an account against loss, resulting from forged instruments;

that appellee was a banking and trust corporation existing under the laws of the State of Texas; that the City of Dallas was a municipal corporation, situated in Dallas County, Texas, with a mayor, board of commissioners, treasurer, auditor, secretary and various department heads, foreman, laborers and other employes engaged in the prosecution of its business; that one Percy Davis is and was, on the dates of the transaction herein alleged, the city treasurer of the City of Dallas, operating under a contract for the handling by deposit and check account, all of the funds of said City of Dallas, and upon whom all warrants, disbursing funds of said city, were drawn; that appellant, on the 15th day of February, 1924, did execute and deliver to said City of Dallas its certain forgery bond, No. DF-234301, expiring on the 15th day of February, 1927, indemnifying said City of Dallas and any bank or banks in which said City of Dallas carried a deposit account subject to checking, including the said Percy Davis, city treasurer, with whom said City of Dallas deposited its funds and maintained a checking account, which bond was in full force and effect on the dates the transactions herein referred to took place; that beginning on the respective dates of July 24, 1925, and December 18th, 1925, one A. M. Lyles, who was the foreman of the Sanitary Sewer Department of the City of Dallas, without the knowledge of the officers of said city, placed upon the payroll of said department the fictitious names of A. C. Roberts and M. Hall, and in the usual and customary method of handling said payroll, and in the regular routine of business, the warrants hereinafter outlined were issued by the authorized city officers to the order of said A. C. Roberts and M. Hall, both fictitious and non-existing persons, but believed by said officers to be existing, and in the usual and customary manner delivered to said A. M. Lyles, who forged the endorsements of the payees and endorsed same in his own name, and under and by virtue of said forged endorsements, and endorsement of his own name, induced the appellee to cash them and to deliver to him, the said A. M. Lyles, the respective amounts thereof.

"Appellant here, under proper allegations, set out each warrant so alleged to have been issued respectively to A. C. Roberts and M. Hall, giving the date thereof, the date of the payroll for week, warrant number, date cashed, date paid by said city treasurer, and amount, the total amount of said warrants aggregating $1,020.80. Appellant further alleged: that upon receipt of said warrants, appellee also endorsed them and thereby guaranteed the genuineness of all

previous endorsements, including that of A. M. Lyles, and that of the payees, A. C. Roberts and M. Hall, which had been forged by said Lyles and thereupon presented them to the said Percy Davis, upon whom they were drawn, and under and by virtue of said endorsements and guaranty of all prior endorsements induced said Percy Davis to pay appellee the respective amounts thereof, to his loss and the loss of the City of Dallas and appellant, in the aggregate sum of $1,020.80, plus legal interest. Appellant, in the alternative alleged, that by reason of said endorsements and guaranty, and by reason of appellant's possession and presentation of said warrants to the said Percy Davis for payment, appellee actually and impliedly represented to said Davis and the City of Dallas, that said warrants were valuable to the extent of the amounts thereof; that it owned the legal and valuable title thereto, and by all of said acts caused said Percy Davis to believe that they were valuable to the extent of the amounts thereof, and thereby induced him, under said belief, that said appellee was entitled to said amounts, under a mistake of fact to pay to appellee the respective amounts thereof, and that thereby appellee was legally bound to return same. Appellant, further in the alternative alleged, that appellee paid said amounts to said Lyles in a grossly negligent, careless and indifferent manner, without regard to the rights of said Percy Davis, upon whom they were drawn, and without proper and sufficient investigation as to the genuineness of said endorsements; that appellee, upon the presentation of each of said warrants, had ample opportunity to make inquiry of the said Lyles and from other sources, as to the genuineness of said endorsements and of the truthfulness of his statement, and by such investigation could and would have discovered said endorsements were forged and thereby prevented said loss, but instead of doing so, appellee relied solely upon the purported honesty of said Lyles, and that appellant, as assignee and holder of the rights and causes of action of the said Percy Davis and City of Dallas, and as the ultimate loser by reason of said negligence, was the proximate cause of said loss, having been damaged in the sum of $1,020.80, plus legal interest, is entitled to recover same from said appellee; that appellant, on or about the 15th day of November, 1926, paid to the City of Dallas, under the terms of said indemnity bond, by reason of its loss, the aggregate sum of $1,020.80, and thereupon by operation of law and equity, and by the terms of said bond, as well as by written assignment, became the owner of and subrogated to all of the right, title, and causes of

action held by the said City of Dallas, or the said Percy Davis, against the said appellee. Appellant prayed for judgment against appellee, for the sum of $1,020.80, and interest thereon at the rate of six per cent per annum from November 25th, 1926.

Appellee answered, (1) by general denial; (2) that appellee was a bona fide purchaser of said warrants for a valuable consideration because said Lyles, in doing all of the acts charged against him by appellant, in obtaining the issuance of said warrants, and endorsing same to appellee, was acting for himself to obtain the money from said city on said warrants under the assumed names of A. C. Roberts and M. Hall, he having assumed said names for that purpose; that therefore, appellee did not cash said warrants on forged endorsements, in that, the endorsements of said Lyles were genuine endorsements since said Lyles was acting in the assumed names of A. C. Roberts and M. Hall; 'that the City of Dallas was guilty of laches and stood by and allowed this defendant to cash said warrants during said period of time, and the said City of Dallas cannot be now heard to claim irregularities in said warrants as against the defendant, who is an innocent party, and who made nothing out of said transaction, but merely cashed said warrants in the general course of its banking business;' 'that it was the duty of said Lyles to place upon the payroll of the Sewer Department the names of employes of that department * * * that by virtue of the fact that the said Lyles did place upon the payroll the names of said A. C. Roberts and M. Hall, said checks issued by the city to the fictitious payees should be held to be checks and warrants payable to bearer, in that, the knowledge that the said A. C. Roberts and M. Hall were fictitious payees is in law imputed to the City of Dallas, since a corporation can only act through its agents, and such action was being committed by the said Lyles as the agent of the City of Dallas in the due course of his employment.'

"DISPOSITION BY TRIAL COURT.

"Judgment was rendered in favor of appellee on an instructed verdict.

"FACTS.

"Following are the material facts we find to have been established: that prior to and during the transaction out of which arose this litigation, the City of Dallas had in its employment one A. M. Lyles as Superintendent of Maintenance in its Sanitary Sewer Department, his duties being to look after the labor and report all broken and bad sewer lines and stopped sewers; that the number

of employes under him varied from six to thirty; that for said department he was authorized to hire and discharge laborers; that he was required to and did make out daily time sheets containing the names of the employes of said city working under him and the amount of money each was entitled to; that said time sheets were delivered at the close of each day to the assistant engineer of said city at his office; that same were filed away until the end of the week when the payrolls would be made up from said time sheets; that it was no part of said Lyles' duty to make out the payrolls for the workmen in said department and he did not do so; that the payrolls so made up were forwarded to the city auditor and in turn by said auditor submitted to the water commissioner, who had supervision of the department for which said payrolls were made out and when approved by said commissioners, the warrants were issued thereon and delivered to the foremen of the respective departments to be delivered by them to the employes for whom issued; that on different dates, between July 24th, 1925, and April 23d, 1926, said A. M. Lyles placed upon the time sheets prepared and delivered by him to the proper official of said city the fictitious names of A. C. Roberts and M. Hall, and that in conformity with said time sheets the names of said Roberts and Hall and the amount of money each was shown thereby to be entitled to were included in the payrolls made up therefrom; that said payrolls were in the regular way approved by the chief office clerk of said Sanitary Department, by the water commissioner and by the city auditor, and warrants were drawn payable to said Roberts and Hall as the actual employes of said city, by its auditor, on the treasurer of said city; that all of the parties dealing with said payrolls and issuing said warrants were in the service of the City of Dallas; that the city treasurer by contract was one Percy Davis and by appointment an officer of said city on salary; that said warrants were drawn in the regular way and routine of business by the proper officers of the city, all of whom believed the said A. C. Roberts and M. Hall to be real persons working in said department and to receive the amounts shown in the respective payrolls as prepared from time to time upon said false time sheets showing said Roberts and Hall to be in the service of the City and entitled to the respective sums of money as reported in said payrolls; that A. M. Lyles represented to the assistant auditor of the city, whose duty it was to deliver said warrants, that said A. C. Roberts and M. Hall worked on small jobs in isolated locations not more than fifteen or twenty minutes at a time, making personal delivery to them of said warrants very uncertain and in-

convenient; that under these conditions the warrants in question were delivered to said Lyles to be by him delivered to said Roberts and Hall; that after said warrants had been delivered to said Lyles, he then forged the endorsement of the fictitious employes, Roberts and Hall, upon the back of the warrants issued to them respectively, took said warrants to the defendant bank where he was well and personally known and maintained an account, endorsed said warrants with his own name and by reason of such endorsements obtained the respective amounts of said warrants for his own use and benefit; that the defendant bank then being the owner and holder of said warrants presented same to the city treasurer of the City of Dallas, with whom said city maintained its account, out of which warrants drawn by it were paid; that the city treasurer, relying solely upon the endorsement of the defendant bank, which was the last endorsement shown on said warrants, and believing that all endorsements thereon were genuine and had been made by the proper parties, and that said employes were actually existing persons in the employ of the City of Dallas, and entitled to receive said amounts, and that said warrants were worth the amounts shown thereon, cashed them and surrendered the respective amounts for which said warrants were issued to defendant bank, which still retains the same, that except for said endorsements and the belief above stated, said city treasurer would not have paid the defendant bank the respective amounts of said warrants totalling the sum of $1,020.80; that defendant collected from said city the respective sums called for by said warrants as each was acquired by it in due course of banking; that during the period of time from July 1, 1925, to April 1, 1926, inclusive, the city had probably about 1300 employes; that no one of the officers or employes representing the city in the preparation of the payrolls or drawing of the warrants involved in this suit knew said Lyles by any other name than that of A. M. Lyles and never heard of him going under or assuming in any respect the name of M. Hall or A. C. Roberts, or knew that he had said warrants so issued in the name of A. C. Roberts and M. Hall for the purpose of collecting the money thereon for his own personal use and benefit; that appellee, on account of the endorsement of the payees therein placed thereon by said Lyles, the endorsement of Lyles, and because he had an account with appellee, cashed each of said warrants, paying the amount thereof to said Lyles without making an investigation to ascertain whether or not the payees in the warrants had in fact endorsed same or to ascertain

whether or not said Lyles was a holder of said warrants in due course; that said Lyles was convicted and sentenced to the penitentiary for forging the endorsement of the fictitious employes, Roberts and Hall, on said warrants. Appellant, on demand of said city, viz., November 30th, 1926, paid the sum of $1,020.80, under its said surety bond, and obtained from the City of Dallas and Percy Davis, its treasurer, proper assignments by which it succeeded to all of the rights, titles and causes of action held by said city and Davis and against defendant.

"QUESTIONS.

"(1) Were the above facts sufficient to charge the City of Dallas with notice at the time the warrants were drawn of the fictitious and nonexisting character of the payees, A. C. Roberts and M. Hall, to whose order the fraudulent warrants were drawn?

"(2) Is the equitable principle, that 'where one of two innocent parties must suffer, he through whose agency the loss occurred must bear it,' applicable to the facts of this case?"

The knowledge of Lyles that the payees named in the warrants were fictitious persons is not to be imputed to the city. Granting that his fraudulent acts proximately resulted in the fictitious payees being named in the warrants, still the city is not chargeable with his guilty knowledge in this respect. For when a city is the intended victim of its agent's fraud, in respect of the issuance of non-negotiable obligations of the city, the agent's knowledge of his own fraudulent devices is not imputable to the city. Even when third persons become the victims of the agent's fraud, respecting the issuance of city warrants, and the municipality derives no benefit from the fraudulent transaction, it has never been held in this state, that the municipality should be charged with the fraud or its consequences. A city warrant is not negotiable commercial paper. It is but prima facie evidence that the city is indebted to the payee, in the amount stated in the instrument, and that the city is obligated to the payee to pay said amount. San Patricio Co. v. McClure, 44 Texas, 329; Leach v. Wilson County, 62 Texas, 331; 15 C. J. pp. 598–602; 2 Dillon Mun. Corp. Secs. 850 et seq. The warrant imposes no obligation on the city to pay the amount called for, if no liability for the debt evidenced by the instrument really exists. Nor will any negligent or fraudulent conduct or act of any city agent, in respect to the emission of a city warrant, bind the city to any liability, by way of estoppel or otherwise, if the city receives no benefit from the transaction. 2 Dillon Mun. Corp. Sec. 857.

Of all this, the appellee was charged with notice when it took the warrants in controversy; and it took them subject to all attending vices. The fact that fictitious persons were named as payees in the warrants did not better the position of the appellee, so far as the city was concerned.

We recommend that both certified questions be answered in the negative.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.