## CITY OF WEST UNIVERSITY PLACE v. PLEASANT.

### No. 8341.

Circuit Court of Appeals, Fifth Circuit.
May 19, 1937.
Rehearing Denied June 30, 1937.

HUTCHESON, Circuit Judge, dissenting from order denying rehearing.

———◆———

Robert L. Sonfield and C. A. Leddy, both of Houston, Tex., for appellant.

W. H. Graham, of Houston, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The District Court, jury trial having been waived, gave judgment against City of West University Place, Tex., in favor of Ralph Pleasant as assignee of three warrants of the city for $1,000 each, together with interest, but denied a claim for attorney's fees. The evidence is not much conflicting, though vague in some points. The city, acting by its mayor and two commissioners, on October 9, 1929, passed a resolution to pave certain streets and entered into a written contract with Carl Pleasant, Inc., to do the work, to be paid for in the main by assessments on the abutting property, but to the extent of $40,000 by the city. To the original draft of the contract was made this addendum: "The contractor shall pay to J. H. Rafferty, the city's engineer, the sum of 5 per cent. of the total cost of improvements covered in this contract, the said sum to be paid out of the cash or time warrants paid by the City of West University Place to the contractor as follows: 2½ per cent. upon the acceptance of this contract, with the plans and specifications, the remaining 2½ per cent. as the several units are accepted and estimates allowed thereon, it being understood that the said sum of 5 per cent. is to be added to the cost of each unit and so set out in each approved estimate." On November 1, 1929, the said city officers in meeting approved the contract and provided for the issuing of time warrants to pay the city's part, laying a tax to meet them as required by the Constitution of Texas; and they also approved the engineer's estimate No. 1 in favor of the contractor, Carl Pleasant, Inc., for $10,698, expressed to be for "earned engineering fees upon completion and approval of plans and specifications, 2½ per cent." of the total improvements, $427,928, and they ordered warrants for $10,000 to be issued to the contractor on it. The warrants were issued and delivered to the contractor, who at once sold them for value to Ralph Pleasant, his brother, living in New Mexico. Carl Pleasant kept the proceeds. He died March 4, 1930. No work was ever done under the contract. The assessments were never made on abutting property. The engineer received nothing from the contractor, though he testifies the city paid him in a subsequent settlement. The city refused to honor the warrants held by Ralph Pleasant, asserting that it was without power to issue them; that the consideration for them had wholly failed; and that they were a part of a fraudulent scheme between the then city officials and Carl Pleasant to enrich themselves at the city's expense, the contract being for a grossly excessive sum and the engineer for whose services the particular warrants were given having done no more than $500 worth of work, besides having been settled with by the city. Ralph Pleasant contended in reply that he was the bona fide holder for value of the warrants, each of which contained a recital that the city owed the amount of its face and "that all acts, conditions and things required to be done precedent to and in the issuance of this warrant have been properly done, happened and performed in legal and due time, manner and form as required by law; and that the total indebtedness of said city including this warrant and the series of which it is one is within every debt and other constitutional and statutory limitation." The court held that Ralph Pleasant, having paid value in reliance on the recitals, must be protected.

The doctrine that a municipality or other governmental subdivision is estopped to deny recitals which its officers had authority to make and which were relied on by a purchaser of its paper, applies especially to negotiable bonds which are intended to circulate. A warrant, though payable at a future date and to the payee or assigns or bearer as these are, is not a negotiable instrument, but an order to the treasurer to pay a sum of money certified to be due on a stated account. The taker of such paper by assignment takes it subject to the infirmities of the transaction of which it is a part. There is no estoppel by its recital that the sum of money for which it is drawn is owing, if in fact it is not owing. In that case the city may and should countermand its order on its treasurer. The warrant is transferable and its recitals are prima facie correct, but are not conclusive. The law to this effect as to city warrants is fully stated in Mayor of Nashville v. Ray, 19 Wall. 468, 22 L. Ed. 164. In Wall v. Monroe County, 103 U. S. 74, 77, 26 L.Ed. 430, where an estoppel was expressly claimed, we read: "The warrants being in form negotiable, are transferable by delivery so far as to authorize the holder to demand payment of them and to maintain, in his own name, an action upon them. But they are not negotiable instruments in the sense of the law merchant. * * * The transferee takes them subject to all legal and equitable de-

fences which existed to them in the hands of such payee. \* \* \* All the courts agree that the instruments are mere prima facie and not conclusive evidence of the validity of the allowed claims against the county by which they were issued. The county is not estopped from questioning the legality of the claims." See, also, Claiborne County v. Brooks, 111 U.S. 400, 4 S.Ct. 489, 28 L.Ed. 470; District of Columbia v. Cornell, 130 U.S. 655, 9 S.Ct. 694, 32 L.Ed. 1041; Watson v. City of Huron (C.C.A.) 97 F. 449. The Texas decisions are to the same effect. Lasater v. Lopez (Tex.Civ.App.) 202 S.W. 1039; National Surety Co. v. State Trust & Savings Bank, 119 Tex. 353, 29 S.W.(2d) 1027; City of Edinburg v. Ellis (Tex.Com.App.) 59 S. W.(2d) 99;. City of Dublin v. Thornton & Co. (Tex.Civ.App.) 60 S.W.(2d) 302. Cases from the Supreme Court of the United States cited as being to the contrary, County of Presidio v. Noel-Young Bond Co., 212 U.S. 58, 29 S.Ct. 237, 53 L. Ed. 402; Waite v. City of Santa Cruz, 184 U.S. 302,. 22 S.Ct. 327, 46 L.Ed. 552; Gunnison County v. Rollins & Sons, 173 U.S. 255, 19 S.Ct. 390, 43 L.Ed. 689; Provident Life & Trust Co. v. County of Mercer, 170 U.S. 593, 18 S.Ct. 788, 42 L. Ed. 1156, and Chaffee County v. Potter, 142 U.S. 355, 12 S.Ct. 216, 35 L.Ed. 1040, each involved negotiable bonds which the law under special safeguards had permitted to be used as a basis of credit with the public. The present instruments, though rather elaborate and lengthy, call themselves warrants, and are so named in the ordinances authorizing them. They would be wholly invalid as bonds under the Texas law. They can be supported only as nonnegotiable warrants having the usual effect of such. We think Ralph Pleasant has no better right to enforce them against the city than Carl Pleasant, Inc., would have if it had not assigned them.

■ Because the evidence is not so clear as it might be made on several matters, we think it better to order a new trial than to pass finally on the defenses urged by the city. It does not appear why the contract was not carried out; why the city did not assess the abutting property; why the contractor did not give bond or start the work. If it was never intended to pave the streets and the contract was fraudulently entered into and these warrants fraudulently obtained as a prepayment for which the city was to get no value, neither the

contractor nor the assignee ought to collect them. If the contract was made in good faith and the warrants were correctly issued under it but the contractor wrongfully breached it and rendered the engineering service represented in the warrants of no value to the city, then as between the city and the contractor the consideration for the warrants failed. The city also contends that the contract is contrary to a Texas statute, which prohibits any municipal officer from being interested in any contract whose consideration is paid from the city treasury, and that it is contrary to general public policy because making the officer who is to supervise for the city the contractor's work look to the contractor for his pay. There is in the record a concession that Rafferty was the city engineer, but not that he was a municipal officer. He testifies that he was a consulting engineer having some sort of general contract with the city which is not in evidence. His connection with the city ought better to appear. The contention that the warrants were issued to the contractor in trust for the engineer that Ralph Pleasant took them subject to the trust and that the city later paid the engineer and became subrogated to his interest in them would seem to require equitable pleadings. All these matters are left open for retrial. We express no final opinion on them.

■ The power of the mayor and two commissioners to do what was projected by them is denied. The city was originally incorporated in 1924 under article 1070 of Texas Revised Statutes of 1911, as amended by Acts Tex.1921, p. 123 (Vernon's Ann.Civ.St.Tex. arts. 1154, 1155), with a commission government consisting of a mayor and two commissioners, and with a population stated to be 260. Under this incorporation, there was no power to improve streets and assess abutting property. In November, 1926, the city officers took steps under article 961, Texas Rev.Stats. of 1925, to adopt and accept the powers granted in title 28; but it does not appear that any election was ever held under that title about improving the streets,. or that any aldermen were ever elected thereunder, and it does appear that the old commission government was continued. In 1927 the Fortieth Legislature, 1st Called Sess., enacted chapter 106 (Vernon's Ann. Civ.St.- art. 1105b), which gives to all cities and towns power to improve their streets and assess abutting property, and this legislation is specially referred to and.

relied on both in the city's ordinance of October 9, 1929, and in the contract for the street improvements. Chapter 106, however, contains a proviso that it shall not apply to a city not having more than 1,000 inhabitants. We construe the proviso to refer to the population of the city at the date the power is to be exercised, rather than at the date of incorporation. The City of West University Place had 260 inhabitants when it was incorporated in 1924. There is no evidence whatever as to its population in October, 1929, and no finding or recital on that subject in the ordinances then passed. The District Court, giving prima facie effect to the warrants, held that in the absence of proof it was to be presumed that the city then had 1,000 inhabitants. Omnia rite acta presumuntur. The truth can doubtless be made to appear on another trial. Then, also, it may be considered, if power under chapter 106 fails, whether recourse can be had under the circumstances to the inchoate effort to adopt title 28, and whether the curative acts relating to such adoptions passed in 1933 and 1935, but which do not seem to do away with the necessary elections or other proceedings under title 28 considered as adopted, and which except cities whose powers are in litigation at the passage of the acts, have any application here. These matters were not considered in the District Court.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

On Motion for Rehearing.

PER CURIAM.

The petition for rehearing in the above numbered and entitled cause is denied.

HUTCHESON, Circuit Judge (dissenting).

I concurred in the order reversing and remanding this cause generally for retrial, and in the reasons given in the opinion for doing so.

I concurred because the fact of Rafferty's municipal officership and its effect had not been found upon by the trial court, and I shared the opinion of my associates that the record did not make such officership sufficiently appear. The motion for rehearing and the argument on it has convinced me that the stipulation "that J. H. Rafferty was the duly appointed, qualified and acting city engineer of the City of West University Place at all material times involved in this suit" fully, completely, and conclusively established that he was a municipal officer, and that instead of reversing for further proof, we ought, reversing the cause, to remand it with directions to enter judgment for defendant.

I do not understand that there is any difference between me and my associates, if Rafferty was a municipal officer, to wit, the duly appointed, city engineer, as to the invalidating effect, as the record stands, of the provision of the contract, that "the contractor shall pay J. H. Rafferty, the city engineer, the sum of 5%." City of Edinburg v. Ellis (Tex.Com.App.) 59 S.W.(2d) 99; Meyers v. Walker (Tex.Civ.App.) 276 S.W. 305; Rev.Stats. of Texas, 1925, art. 988; 46 C.J. 1038; Montgomery v. Atlanta, 162 Ga. 534, 134 S.E. 152, 47 A.L.R. 233.

I understand their view is that the record does not sufficiently establish that he was. I cannot agree with this view. I believe the rehearing should be granted, and the order of reversal amended to direct judgment for defendant.

I therefore respectfully dissent from the order overruling the motion for rehearing.