**ROBERTS et al. v. GRIFFITH.**

No. 2635.

Court of Civil Appeals of Texas. Eastland.

Dec. 23, 1947.

Rehearing Denied Jan. 16, 1948.

Smith, Eplen, & Bickley, of Abilene, for appellants.

Scarborough, Yates, Scarborough & Black, of Abilene, for appellee.

LONG, Justice.

On October 5, 1945, Mrs. Ross Cartwright, as executrix of the Cartwright estate, by a contract in writing, leased a 200 acre farm in Taylor County to appellee Griffith on a third and fourth basis for a term of three years beginning January 1, 1946, and ending December 31, 1948, with a provision the lease could be terminated on the first day of January of any year by a written notice given by either party to the other on or before the first day of September prior to the effective date of termination. On the 26th day of September, 1946, Mrs. Cartwright, executrix, leased to appellee Griffith 546 acres of grass land adjoining said 200 acre farm for a term of two years, beginning on October 1, 1946 and ending September 29, 1948. The grass lease contained a provision in which Mrs. Cartwright reserved the right to sell said land and in the event of such sale, the lessee would, after 90 days notice of sale, surrender the possession thereof. In March, 1947, appellee was notified that the land had been sold and possession was

requested. On the 3rd day of April, 1947, the Cartwright heirs conveyed both of said tracts of land to appellants, H. R. and Alton Roberts, and assigned said two lease contracts to them. Appellee refused to surrender possession. On May 30, 1947, appellants instituted this suit against the appellee for possession of the land, alleging in substance, the facts set out above. Appellee answered by a general denial and further plead that Mrs. Cartwright waived the provision in the lease reserving the right to sell the land and to terminate the lease by reason thereof.

The court submitted the two following Special Issues to the jury, both of which were answered in the affirmative:

"Special Issue No. 1. Do you find from a preponderance of the evidence that, after the execution of the lease contracts between Mrs. Cartwright and W. W. Griffith, Mrs. Cartwright stated to W. W. Griffith that she would not sell the leased property and for him to forget the provisions of the contracts about the sale of the property and termination of the lease? Answer 'Yes' or 'No.'

"If you have answered Special Issue No. 1 'Yes', and in that event only, you will answer Special Issue No. 2:

"Special Issue No. 2. If in answer to the foregoing Special Issue you have found that Mrs. Cartwright stated to W. W. Griffith that she would not sell the leased property and for him to forget the provisions of the contracts about the sale of the property and the termination of the lease, do you find from a preponderance of the evidence that the said W. W. Griffith relied on such statements in retaining possession of the leased property and making improvements thereon? Answer 'Yes' or 'No'."

Upon the above issues, and the answers of the jury thereto, the court entered a judgment in favor of the appellee from which appellants have duly appealed.

Appellants based their appeal upon six points, contending in substance, that the Statute of Frauds is applicable and that no waiver of the provision in the lease as to the sale of the land and termination of the lease was shown. Appellee contends that the suit was prematurely brought and that the facts show that Mrs. Cartwright waived said provision in the lease contract.

Appellee Griffith testified that he made the trade with Mrs. Cartwright for the farm land first. That he caused the lease contract covering the farm to be prepared and sent to Terrell, Texas, to Mrs. Cartwright for her signature. After the execution of the farm lease contract, he went into possession of the farm land and moved into the house located thereon in the first part of the year 1946. He further testified that Mrs. Cartwright agreed at the time he leased the farm that he might have a lease for grazing purposes on the pasture land at such time as she should obtain the possession thereof.

In the fall of 1946, she executed and mailed to appellee the lease on the grass land. He received said lease contract in the due course of the mails, executed it and returned it with his check for the lease money to Mrs. Cartwright. Appellee at that time took possession and began to use the grass land. He testified that thereafter, in some two or three months, at the first time he had an opportunity to talk to Mrs. Cartwright, that he told her that he could not handle the lease with the sales provision therein; that he could not borrow any money on account of such provision and that she told him that she could not and would not sell the land and for him to forget this provision of the contract. This conversation was denied by Mrs. Cartwright. However, the jury found in favor of the appellee upon this issue. The question here presented for our determination is, do these facts show a waiver on the part of Mrs. Cartwright of that provision in the lease contract reserving to her the right to sell the land and in such event to terminate the lease contract. A waiver is the intentional relinquishment of a known legal right. We are of the opinion that the facts do not constitute a waiver.

"In order to constitute a waiver, the right, benefit, or advantage in question must be in existence at the time, although it may be unenforceable. Waiver involves the voluntary relinquishment of some

known right which is at the time available; thus, one cannot waive that which is not his as of right at the time of waiver; a person cannot waive a right before he is in a position to assert it." 67 C. J., page 299, Sec. 4.

It is contended here that Mrs. Cartwright, by her conversation with appellee, waived her right to terminate the lease contract in the event of the sale of the land. At the time of such conversation, she had not sold the land. She had no right at that time to terminate the lease. The contract did not authorize a termination of the lease until the land was sold.

"A waiver, it has been said, can only operate, like a gift, in praesenti. When intended to operate in futuro, it has been said to be at most only an agreement to waive, which, it would seem, must, like all other agreements, have a consideration." 67 C.J., page 299.

Further, one of the essential elements of a waiver is, the existence of an opportunity for choice between a relinquishment and the enforcement of the right in question.

It has been held that a waiver is like the legal concept of election of remedies. Under the facts in this case, Mrs. Cartwright was not called upon to elect as to whether or not she would enforce her right to terminate the lease in event of sale for the reason that she had not at the time of the alleged waiver sold the land and then had no right to terminate the lease. Appellee did not testify that he told her he was going to surrender the premises and demand the return of the unearned portion of the consideration paid for the lease unless she agreed not to sell the land.

There is no showing in the record that appellee had been refused a loan by reason of the provision in the contract or that after the conversation with Mrs. Cartwright he borrowed any money on the strength thereof. At the time of the conversation, Mrs. Cartwright had no existing right that she could waive. Langley v. Norris, Tex.Civ.App., 167 S.W.2d 603; DeWitt v. Kent County et al., Tex.Civ. App., 148 S.W.2d 213; Templer v. Muncie Lodge, I. O. O. F., 50 Ind.App. 324, 97 N.

E. 546; Harris et al. v. Sparks, 222 Ky. 472, 1 S.W.2d 772; Farmers' & Mechanics' Nat. Bank of Fort Worth v. Head et al., Tex.Com.App., 7 S.W.2d 61.

At most, the facts show an agreement on the part of Mrs. Cartwright to not enforce that provision of the contract giving her the right to terminate the lease after a sale. It is our opinion that the judgment cannot be sustained upon this agreement. Section 4, Art. 3995, provides that no action shall be brought in any court upon a contract for the lease of real estate for a longer term than one year unless such an agreement be in writing. At the time of the conversation testified to by appellee, in which Mrs. Cartwright agreed not to terminate the lease contract in the event of sale, the grass lease had 21 months to run before its termination under the contract. Consequently, the agreement comes squarely within the above provision of the Statute of Frauds.

As was said by this court in the case of O. J. Urban et ux. v. Price Crawley et al., 206 S.W.2d 158, 161:

"The same rule of law applies to a verbal lease of land for a longer period than one year as applies to a parol sale of land. In order to relieve such a verbal contract from the operation of the Statute of Frauds, three things must necessarily exist as follows:

"(1) Payment of the consideration, whether it be in money or services.

"(2) Possession under the verbal lease by the lessee.

"(3) The making by the lessee of valuable and permanent improvements upon the land with the consent of the lessor or without such improvements, the presence of such facts as would make the transaction a fraud upon the lessee if it were not enforced.

"The existence of any one or two of these elements is not sufficient. All three must exist to defeat the operation of the Statute."

Applying the facts in this case to the principles as announced above, it is our opinion that none of the elements necessary to relieve the verbal contract from

the operation of the Statute of Frauds exists. Appellee did not pay any consideration for such verbal contract. Further, appellee did not make valuable and permanent improvements on the leased premises. He testified that he built a tank on the property after the conversation with Mrs. Cartwright, but upon cross examination, he admitted that he paid none of the expenses incurred in the building of the tank, but that the same was paid for by the United States Government. He testified that he painted and papered the house on the ranch. That Mrs. Cartwright paid for the material and that he paid the paper hanger. He further testified that he repaired some of the fences on the leased premises. It is the tenant's duty to keep the leased premises repaired. There is no showing in the record as to the amount of money expended by him in making such repairs. We believe that the repairs as made were not sufficient to take the verbal agreement out of the Statute of Frauds and that same were not valuable and permanent improvements necessary to relieve the contract of the Statute. Further, there are no facts shown to exist to make the transaction a fraud upon appellee if the verbal contract were not fulfilled. Hooks v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216; Walker Avenue Realty Co. v. Alaskan Fur Co., Tex.Civ.App., 131 S.W.2d 196; Medical & Professional Building Corporation v. Ferrell, Tex.Civ.App., 131 S.W.2d 683; Lechenger v. Merchants' National Bank, Tex. Civ.App., 96 S.W. 638; Clark v. Jones, Tex.Civ.App., 164 S.W.2d 62; Hauser v. Zook, Tex.Civ.App., 278 S.W. 518.

Appellee contends that this suit was prematurely brought for the reason that Mrs. Cartwright could not terminate the farm lease until the first day of January, 1948 and could not terminate the grass lease until after 90 days notice of the sale of the land. This contention is overruled. Appellee declared before the suit was filed that he would not give possession of the land and did not recognize the validity of the provision reserving the right to Mrs. Cartwright to sell the land and terminate the lease. We can see no good reason why the appellant would be compelled to wait to bring this suit until the

1st day of January, 1948 or until the expiration of the period of the 90 day notice because it is evident from the record that the appellee did not intend to and would not give possession of the land voluntarily. In other words, the appellants' cause of action arose at the time appellee stated positively that he did not recognize the provision in the lease giving Mrs. Cartwright the right to sell the land. 10 Tex.Jur. page 449.

From a careful study of the record in this case, it is our opinion that the judgment of the trial court should have been in favor of the appellants for the possession of the land in question.

It is, therefore, our duty to render the kind of a judgment that should have been rendered by the trial court. The judgment of the trial court is reversed and judgment is here rendered in favor of the appellants for the immediate possession of the grass land and for possession of the farm land on January 1, 1948.

Judgment of the trial court is reversed and judgment rendered for appellants.