**CITY OF DEL RIO v. LOWE et al.**

No. 10179.

Court of Civil Appeals of Texas. San Antonio.

Oct. 27, 1937.

Rehearing Denied Dec. 15, 1937.

Conger, Low & Spears and Lester Whipple, all of San Antonio, and Roger Thurmond, of Del Rio, for appellant.

John L. Dodson, of Del Rio, for appellees.

CLAUDE V. BIRKHEAD, Special Justice.

This action was brought by H. J. (Jap) Lowe and others, taxpaying citizens of the City of Del Rio, Tex., to temporarily enjoin said city from paying certain warrants, bonds, and other obligations theretofore issued by the city. Upon the hearing the trial judge granted, in part, the injunction as prayed for, and the city has appealed. The facts are stated in the discussion of the various assignments of error to follow.

Appellant's first assignment of error complains of the action of the trial court in overruling the general demurrer of the defendant, City of Del Rio, to plaintiffs' petition, contending that the warrants, bonds, and other obligations, the payment of which was sought to be enjoined, were in the hands of various unknown owners, and that plaintiffs, as shown by their petition, were guilty of laches. This assignment is overruled. The petition does not show, upon its face, that the rights of unknown owners or bona fide purchaser for value and without notice have intervened. Furthermore, plaintiffs' petition does not disclose that they were guilty of laches as a matter of law. In the case of City of Corpus Christi ex rel. Harris v. Flato (Tex. Civ.App.) 83 S.W.2d 433, cited by appellant in support of its contention, the plaintiffs' petition disclosed that the bonds involved

therein passed into the hands of various persons referred to in the petition as "unknown owners and holders," and the suit in that case was filed more than five years after the first bonds were issued and more than three years after the last bonds were issued, and it is clear that the court, in holding that such delay constituted laches as a matter of law, based its decision on the further fact that during such delay the rights of others had intervened. In the case at bar, suit was instituted in December, 1936, within two years after the issuance of the first of such warrants, and approximately four months after the issuance of the last of the obligations here involved. In view of this fact, and since the petition does not show, upon its face, that the rights of unknown owners or bona fide purchasers for value without notice have intervened, it cannot be held, as a matter of law, that plaintiffs were guilty of laches.

■■ Appellant's second assignment of error, divided into parts (a), (b), (c), (d), and (e), complains of the trial court's action in enjoining appellant from the enforcement of a tax levy and the use of tax funds and revenues from the city's waterworks system to pay certain City of Del Rio waterworks warrants in the sum of $20,000 issued to C. A. Cripe under an ordinance of said city dated May 28, 1935. These warrants are numbered 1 to 20, inclusive, each in the sum of $1,000, bearing interest, payable semiannually, at 6 per cent. per annum, 2 of which mature annually on the first of June from the year 1936 to and including the year 1945, and were issued for the purpose of evidencing an indebtedness of the City of Del Rio to C. A. Cripe for the contract price of certain improvements made by Cripe upon the city's waterworks system in accordance with a certain contract between said Cripe and the city. The ordinance levied a tax and created a special fund for the payment of the principal and interest of the warrants at maturity. The ordinance also recites that "the Mayor of said City caused a notice to be published in the 'Del Rio Evening .News' calling for bids for said Water Works Improvements, and setting out the intention of the City Commission to issue Time Warrants in payment of the contract price, which notice was published on the 10th day of May and 17th day of May, respectively, and was in all respects in conformity with the provisions of the law covering such notices," and each of the warrants provides that "it is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issuance of this warrant, have been properly done, have happened and been performed in regular and due time, form and manner, as required by law." Notwithstanding the above recitals, the notice of intention to issue said time warrants was published one time only and that on the 10th day of May, 1935.

The trial court's action is evidently based upon its conclusion that since these $20,000 warrants were issued in payment of the contract price for certain improvements upon the city's waterworks system, the issuance thereof is governed by articles 1111, 1112, 1114, as amended, Acts 1933, 43d Leg., p. 320, c. 122, Vernon's Ann.Civ. St. arts. 1111, 1112, 1114, under which statutes said warrants could never become a debt of said city, payable by taxation, but, if properly issued, could only be an obligation of the city's waterworks system, payable only out of the revenues thereof; and that the warrants are void, because same were not submitted to a vote of the people of the city, as required by said statutes, and the notice of intention to issue same was not published as required by sections 2, 3, and 4, of article 2368a, Vernon's Ann.Civ.St., Acts 1931, 42d Leg., p. 269, c. 163.

Appellant's contention that the mere fact that the $20,000 warrants were issued for the purpose of "improvements" of the city's waterworks system does not bring such warrants within articles 1111, 1112, 1113 and 1114, Acts 1933, 43d Leg. p. 320, c. 122, nor prevent same from becoming a debt of the city, payable out of funds raised by taxation, if such warrants were authorized by other provisions of the law, should be sustained. Articles 1111 to 1114, inclusive, have no application to these warrants, as there was no attempt in this instance to encumber the city's waterworks system. Those articles provide principally for the encumbrance of light, water, sewer, and gas systems and certain other municipal properties, and for the creation of obligations against such systems and properties in the form of bonds, notes, or warrants, for the purposes of building, purchasing, improving, enlarging, extending, or repairing such systems or properties, and further provide that "no such obliga-

tion of any such systems shall ever be a debt of such city or town, but solely a charge upon the properties of the system so encumbered." Article 1111. Article 1112 provides that no such system shall "be encumbered for more than Five Thousand ($5,000.00) Dollars, except for purchase money, or to refund any existing indebtedness lawfully created," until "authorized by a majority vote of the qualified voters of such city or town." Article 1114a provides that "projects financed in accordance with this law are hereby declared to be self liquidating in character and supported by charge other than by taxation."

It is therefore apparent that, when such systems or properties of a municipality have been encumbered under the above statutory provisions, the obligations evidencing such encumbrance can be paid only from the revenues from such systems or properties and cannot constitute a debt against the city or town to be paid by taxation. However, where there has been no attempt to create such encumbrance, as in this instance, such provisions will not apply and will not prohibit the city's improving its waterworks system and paying for such improvements by the issuance of warrants to be paid by taxation.

There are other provisions of the law under which municipal warrants may be issued for the purpose of improving the city's waterworks system, providing for the issuance of time warrants to be paid by taxation, and which warrants, upon certain conditions, may be issued without a vote of the people of the city or town. Article 2368a, §§ 2, 3, and 4; article 1015, subds. 30 and 43; and article 8, section 9, Constitution of Texas.

Under the above constitutional and statutory provisions, a city has the power to improve its waterworks system and to pay for such improvements with funds raised by issuance of time warrants to be paid by taxation, and such warrants may be issued without a vote of the people, if issued in compliance with article 2368a, §§ 2, 3, and 4.

The facts clearly show that the $20,000 warrants were issued under article 2368a, §§ 2, 3, and 4, and all provisions thereof were complied with, except the provisions requiring publication of notice of the intention of the city commissioners to issue such warrants, it appearing that such notice was published only once, whereas section 2, of article 2368a, requires such notice to be published once a week for two consecutive weeks. Therefore, the failure to publish the required notice brings in question the validity of the warrants. Sections 2 and 9, of article 2368a, expressly provide that all contracts or agreements, and any warrant or other evidence of debt or obligation, created under said article, without complying with the terms thereof, shall be void and unenforceable. It is obvious that under these provisions both the warrants and the original contract with Cripe are void, by reason of the city's failure to comply with the requirement as to publication of notice. The appellant contends, however, that by reason of the recitals in the ordinance and the warrants issued thereunder to the effect that the required notice was published and that all provisions of the law had been complied with, and the further fact that the City of Del Rio received the benefits of the contract between it and Cripe under which improvements were made on its waterworks system, such city is estopped to deny the validity of the warrants as against a bona fide holder and that the burden was upon the appellees, plaintiffs below, to prove the invalidity of such warrants, as against such holder, to be entitled to the relief sought, which burden plaintiff failed to sustain. This contention should be upheld. In the case of City of Marshall v. Elgin (Tex.Civ.App.) 143 S.W. 670, 675, writ of error refused, it was held that, in a suit by a taxpayer to enjoin collection of taxes for payment of bonds issued by the City of Marshall, and to have said bonds declared invalid, the burden was upon the plaintiff to prove that the bonds are "void in the hands of any holder," and that the court should presume that the bonds issued are in the hands of bona fide purchasers, in the absence of proof to the contrary, citing and quoting from the case of City of Tyler v. Tyler Building & Loan Association, 99 Tex. 6, 86 S.W. 750, 752, which held that the "taxpayers can defend against a city for the assessment of taxes made to pay interest and create a sinking fund on bonds which are void, but they must prove conclusively that the bonds are void in the hands of any holder, so that there can be no recovery by the holders of the bonds against the city; otherwise there would be the anomalous condition of a city, which represents its inhabitants, being bound by an obligation which is not binding upon the people who compose the city." The obliga-

tions attacked in those two cases were negotiable bonds, but, so far as the rule as to burden of proof is concerned, there appears to be no reason why those authorities will not apply to nonnegotiable city warrants. It may be further added that, if the warrants are not in the hands of bona fide purchasers for value and without notice, the burden of proving such fact was on the plaintiffs, and the record in this case fails to disclose that such burden was sustained.

The $20,000 warrants are payable to "C. A. Cripe, his assigns or bearer," but, by a well-settled rule in this state, these warrants are nonnegotiable, Payne v. First National Bank (Tex.Com.App.) 291 S.W. 209, 212; National Surety Co. v. State Trust & Savings Bank, 119 Tex. 353, 29 S.W.2d 1027; City of Dublin v. H. B. Thornton & Co. (Tex.Civ.App.) 60 S.W.2d 302; City of Edinburg v. Ellis (Tex.Com.App.) 59 S.W.2d 99; 30 Tex. Jur. p. 432, and, under these authorities, it is the general rule that the assignee of such warrants takes same subject to all defenses held by the debtor city. There is, however, an exception to this rule in the case of estoppel. Payne v. First National Bank, supra. The Commission of Appeals, in the Payne Case, said:

"The ultimate thing that the city council was authorized to do, and contemplated doing, in behalf of the city, was in fact done by means of money received on warrants purporting to be issued for that purpose. We are not convinced that courts may not treat these improvements, so obtained by the city, as the real consideration for the city's obligation on the warrants. But, be this as it may, and whatever might have been the legal effect on the warrants, if the money derived from them had been used for other municipal purposes, we are thoroughly convinced that a municipal corporation, under the facts of this case, should be held to rules of estoppel, the same as the individual citizen would be under the same circumstances. * * *

"In the present case the bank bought the warrants in good faith, for a valuable consideration without notice of the real facts, and in reliance upon the truth of the recitals of the warrants and the several ordinances relating to their issuance. As against the bank, the city was estopped from asserting a defense based upon facts at variance with such recitals.'

One of the indispensable elements of estoppel by recital, as applied to nonnegotiable warrants, is benefits received by the city or county issuing same, City of Dublin v. H. B. Thornton & Co. (Tex. Civ.App.) 60 S.W.2d 302; Nacogdoches County v. Lafferty (Tex.Com.App.) 61 S.W.2d 994; National Surety Co. v. State Trust & Savings Bank, 119 Tex. 353, 29 S.W.2d 1027, and, where the municipality receives no benefit from the transaction, it cannot be estopped to assert failure of consideration or fraud or invalidity of the warrant, Id. Since the burden was on the plaintiffs below to prove the invalidity of the warrants in the hands of any holder thereof, it was therefore encumbent upon them to negative estoppel, which burden may have been sustained by proof that the city received no benefits from the contract for improvements of the city's waterworks system entered into between it and C. A. Cripe, and the record fails to disclose that such proof was made.

Appellees cite the case of City of Edinburg v. Ellis (Tex.Com.App.) 59 S.W. 2d 99, in support of their contention that since city warrants are nonnegotiable, the city cannot be estopped from asserting the invalidity of such warrants. In that case, however, the rights of bona fide purchasers for value and without notice were not involved, and therefore its holding is not opposed to the above rule.

Appellees also cite the case of Citizens' Bank v. City of Terrell, 78 Tex. 450, 14 S.W. 1003, for the proposition that, if the "debt is void for want of authority to create it, then no subsequent ratification can give it validity, and there can be no bona fide holder with the right to collect it." That case announces the well-settled rule that, if there is a total lack of power on the part of the municipality to do the act attempted, by reason of constitutional or statutory inhibitions, the city can never be bound by such act or estopped from asserting its invalidity, for everyone is placed on notice of such lack of power. However, there is a distinction between total lack of power and irregular or improper exercise of power conferred, and where the power to issue municipal warrants, such as those here involved, is conferred upon the city, by constitutional and statutory provisions, as in the case at bar, estoppel will apply to a defense that such power was improperly exercised in the issuance of such warrants. Grimes County

v. W. L. Slayton & Co. (Tex.Civ.App.) 262 S.W. 209, 213.

▮ It follows, therefore, that the trial court erred in so far as it enjoined the tax levy and the use of tax funds raised thereby for the payment of the $20,000 warrants.

▮ Appellant's third assignment of error complains of the trial court's action in enjoining the City of Del Rio from enforcing the provisions of an ordinance enacted by its city commissioners on September 6, 1935, levying a tax for the payment of certain warrants, designated "City of Del Rio Water Works Warrants, Series Two, of 1935," in the sum of $25,000, issued to C. A. Cripe by virtue of said ordinance, and enjoining the appropriation and use of any part of the revenues of the waterworks system to pay such warrants. The $25,000 warrants were issued to C. A. Cripe for the purpose of evidencing an obligation incurred by said city to C. A. Cripe by virtue of a contract entered into by and between said parties under which C. A. Cripe agreed to construct and complete certain "water works extension and improvements" to the city's waterworks system.

The record clearly indicates that the City of Del Rio complied with all the requirements of article 2368a, §§ 2, 3, and 4, and that the ordinance of September 6, 1935, and the $25,000 warrants issued thereunder are in substantially the same form and substance, with reference to recitations as to the manner in which the provisions of the above article were complied with, as the ordinance of May 28, 1935, and the $20,000 warrants issued thereunder. However, as to the $25,000 warrants, the requirement of publication of the notice was fully complied with and there is no attack upon the validity of these warrants upon that point. It follows that the ordinance of September 6, 1935, and the $25,000 warrants issued thereunder are valid in so far as same comply with said statute, and the tax levied, by such ordinance, for the purpose of paying the principal and interest of said warrants, is valid; and the trial court erred in restraining the enforcement of said ordinance in so far as it levied a tax on the taxable property of said city for the purpose of establishing a sinking fund to provide for the payment of said warrants. However, this ordinance also attempted to appropriate and pledge the net revenues of the city waterworks system then available, and certain net revenues to accrue in future years, to be used for the payment of these warrants, and appellees attack the ordinance and warrants on the grounds that articles 1111, 1112, 1113, and 1114 were not complied with in regard to encumbrance of the waterworks system and submitting the proposition to a vote of the people, as required by said articles.

In the case of City of Dayton v. Allred, 123 Tex. 60, 68 S.W.2d 172, 173, it was held that, where an ordinance "pledges or mortgages" a certain sum "out of the net revenues" of the City of Dayton's waterworks system to pay certain revenue bonds issued by the city for the erection of a new sanitary sewer system, such pledge was an "encumbrance" on the waterworks system, and, the proposition not having been submitted to a vote of the people, is in violation of article 1112 and is void. To same effect are McCann v. Akard (Tex.Com.App.) 68 S.W.2d 1033, and Radford v. City of Cross Plains, 126 Tex. 153, 86 S.W.2d 204.

Appellant cites subdivision 43, of article 1015, and article 1106, in support of its contention that the appropriation and pledging of said net revenues for the above purpose is valid. These provisions should be construed in connection with articles 1111 and 1112. Though subdivision 43, of article 1015, and article 1106, may authorize a city to appropriate the available revenues of its waterworks system, in an amount over and above that which is necessary to pay all prior claims or charges thereon, for the purpose of retiring and discharging accrued indebtedness of the city, or to pay its bonded indebtedness incurred on account of said system, yet these provisions, considered in the light of articles 1111 and 1112, should not be construed to authorize a city or town to pledge or encumber net revenue of its waterworks system for the payment of obligations maturing in the future, such as those here involved, without complying with article 1112 with reference to submitting the matter to a vote of the qualified voters of such city or town.

Therefore, appellant's attempt to appropriate and pledge the net revenues of its waterworks system to be applied to the payment of the $25,000 warrants maturing in future years was an attempt on the part of appellant to encumber its waterworks system, and, the proposition not

having been submitted to a vote of the qualified voters of the City of Del Rio, the ordinance authorizing such encumbrance is void to the extent of such authorization; and the trial court did not err in restraining the enforcement of said encumbrance and said ordinance in so far as same attempted to create an encumbrance on said waterworks system.

Appellant's fourth assignment of error complains of the trial court's action in regard to the "City of Del Rio Water Works Warrants, Series of 1936," issued to C. A. Cripe in the sum of $10,000, under ordinance of said city of January 13, 1936, which action of the court was the same as its action on the $25,000 warrants. These $10,000 warrants and the $25,000 warrants above discussed were issued under similar circumstances with reference to appropriation and pledging of the net revenues of the city's waterworks system and the levy of a tax for the payment of the warrants to mature in future years, these warrants having been issued under section 5 of article 2368a, in payment of the contract price of certain improvements and extensions of the city's waterworks system to be made under a contract entered into by and between said city and C. A. Cripe on January 13, 1936; and therefore, the above disposition of appellant's third assignment of error in regard to the $25,000 warrants may also be made as to the $10,000 warrants.

Appellant's fifth assignment of error, divided into parts (a), (b), (c), (d), (e), complains of the trial court's action in enjoining the enforcement of the tax levy, and the use of revenues of the city's waterworks system, to provide payment of City of Del Rio refunding bonds of 1936, in the sum of $53,000, issued by virtue of an ordinance dated August 1, 1936. These funding bonds were issued to refund the time warrants heretofore considered, to wit: $18,000 balance due on the $20,000 time warrants of May 28, 1935; the $25,000 time warrants of September 6, 1935; and $10,000 time warrants of January 13, 1936. The funding bonds were each in the sum of $1,000, the first 18 of which bear 6 per cent. interest and the rest bearing 5 per cent. interest, payable semiannually, said bonds maturing in future years, from August 1, 1937, to and including August 1, 1955. Notice of intention to issue the funding bonds was published as required by law, and, no petition praying for an election thereon having been submitted, the bonds were issued by the commissioners of the City of Del Rio without a vote of the people of said city, as disclosed by the ordinance of August 1, 1936. The ordinance authorizing these refunding bonds appropriated and pledged the revenues of the city's waterworks system accruing annually in amounts necessary to pay said bonds as same mature, and provided for levying and collecting annually a tax sufficient to pay said bonds, provided, however, that only so much of said tax was to be annually assessed and collected as would be necessary to supplement the available revenues of said waterworks system appropriated and pledged for such payment.

What has been said hereinabove in regard to appellant's attempt to encumber its waterworks system is equally applicable to the $53,000 refunding bonds. Undoubtedly, the ordinance authorizing these bonds attempted to create an encumbrance upon the waterworks system of the City of Del Rio in violation of article 1112, and, since the appellant has no power to create such encumbrance without a vote of the qualified voters of said city, such encumbrance is void and unenforceable. Therefore, the trial court did not err in so far as it enjoined the use of the revenues of said waterworks system for the payment of said bonds. This conclusion, however, does not render the bonds invalid in so far as same were issued in compliance with sections 7 and 8, article 2368a, providing for the issuance of funding bonds to be paid by taxation, without a vote of the people, where the required notice of intention to issue such bonds has been published and no petition praying for an election thereon has been submitted. Appellant complied fully with the above provisions, and the funding bonds, so far as the record of this case discloses, are valid to the extent of such compliance, and are valid obligations against the City of Del Rio. Therefore, the trial court erred in enjoining the enforcement of the tax levy and use of funds raised thereby for the payment of said bonds.

Appellant's sixth assignment of error, divided into parts (a), (b), (c), (d), (e), (f), complains of the trial court's action in enjoining the tax levy and the use of any funds raised by taxation for the payment of the "City of Del Rio Funding Bonds," in the sum of $22,740, issued by

virtue of an ordinance of said city, dated December 10, 1935. These bonds were issued to refund, and in lieu of, a certain vendor's lien note in like amount, dated November 5, 1935, payable to the order of G. Bedell Moore, and executed by the City of Del Rio, which note was given in part payment of the purchase price of the San Felipe Country Club, which property is, in fact, the source of the water supply of the waterworks system of said city, and the payment of which note was secured by a vendor's lien against said property known as San Felipe Country Club. These bonds were numbered from 1 to 23, inclusive, the first of which being in the sum of $740, and the balance in denominations of $1,000 each, bearing interest, payable semiannually, at the rate of 5 per cent. per annum. Bond No. 1 in the sum of $740 matured on December 10, 1936; and the remainder of said bonds mature in future years, from December 10, 1937, to and including December 10, 1955. The trial court found that "The expressed purpose for the issuance of said bonds was for funding, cancelling and in lieu of a like amount of legal outstanding indebtedness of said city" evidenced by said vendor's lien note; that notice of intention to issue such refunding bonds had been duly published in the time and manner required by law, and no petition was filed asking that the issue of said bonds be submitted to a referendum election, and the bonds were issued without a vote thereon of the qualified voters of said city. The ordinance authorizing these bonds levied a tax to be annually assessed, collected, and applied to the payments of said bonds as same mature, and also appropriated out of the revenues of the waterworks system and other current revenues of the city an amount sufficient to pay the principal and interest of bond No. 1; and each bond contained a provision that "The full faith, credit and resources of said City are hereby irrevocably pledged to the prompt payment of the principal and interest of these bonds at maturity."

No complaint is made by any party to this proceeding of the trial court's action in refusing to enjoin the use of revenues from the city's waterworks system for the payment of the $22,740 refunding bonds, and therefore the only question to be decided in regard to this bond issue is whether or not the trial court erred in enjoining the levy, collection, and use of any taxes for the purpose of paying said bonds.

It is evident that the ordinance of December 10, 1935, did not attempt to encumber the city's waterworks system for the payment of the above bonds, numbered 2 to 23, inclusive, but merely created an encumbrance on such system only for the payment of bond numbered 1 in the sum of $740. The provision contained in each bond that "The full faith, credit and resources of said city are hereby irrevocably pledged to the prompt payment of the principal and interest of these bonds at maturity," construed in connection with the other provisions of said bonds and the ordinance under which same were issued, does not create an encumbrance or charge upon the city's waterworks system or upon any other utility system of said city, within the meaning of articles 1111 to 1114, inclusive. As to all bonds maturing after the year 1936, i. e., bonds numbered 2 to 23, inclusive, a tax was levied to be collected and applied to the payment thereof, and as to these bonds there was no attempt to create a lien, charge, or encumbrance against or on the property or revenues of the waterworks system or any other utility of the city.

It appears that said bonds numbered 2 to 23, inclusively, were properly issued in accordance with sections 7 and 8, of article 2368a, and are valid obligations of said city, in so far as the record of this case discloses. Therefore, the trial court erred in enjoining the tax levy and use of taxes thus raised for the payment of such bonds. But, as to funding bond No. 1, the trial court did not err in enjoining the tax levy or use of taxes for payment thereof.

Appellant's seventh and eighth assignments of error each divided into parts (a), (b), (c), (d), and (e), complain of the trial court's action in enjoining the tax levy and the use of any funds raised by taxation for the payment of two certain warrant issues, to wit: (1) "City of Del Rio Water Works Warrants of 1936, Series Two," aggregating $1,950, being 4 in number and maturing on March 1, 1938, 1939, 1940, and 1941, respectively, said warrant issue being authorized by ordinance of said city dated February 24, 1936; (1) "City of Del Rio Water Works Warrants of 1936, Series 3," in the aggregate sum of $1,950, being 4 in number and maturing on March 1, 1942, 1943, 1944, and 1945, respectively, said warrant issue being authorized by ordinance of said city, dated March 30, 1936; and all of said

warrants bearing interest at the rate of 5 per cent. per annum, payable semi-annually.

The above warrants were issued "for the purpose of evidencing the indebtedness of said city incurred for labor necessary to construct water works extensions in Garden Parks Subdivision" of said city, as recited in each of the above ordinances. It also appears that when the warrants were issued the above work was being performed by the City of Del Rio under its direct supervision, the labor being performed on a per diem basis, and F. L. Hill agreed to purchase the claims of the laborers employed by the city and to accept said warrants in payment thereof.

There was no attempt to create an encumbrance or charge against the city's waterworks system or any other of its utilities for the payment of the above warrants; but a tax was levied for the payment of the interest and principal of said warrants as same mature. No notice of intention to issue these warrants was published, nor was the issuance of such warrants submitted to a vote of the qualified voters of the city. The trial court concluded, as a matter of law, that since the warrants were issued for "labor" necessary in construction of waterworks extensions of said city, same were within the provisions of article 1113, and that, under articles 1111 and 1114, said warrants were obligations of the city's waterworks system only and could not be a debt of the city to be paid by taxation, and that the levy of a tax for the creation of a sinking fund for the payment of said warrants was void.

Undoubtedly the City of Del Rio had the power to make extensions to its waterworks system, Subdivisions 30 and 43, of article 1015, article 1175, subd. 11; and to pay for same by taxation, Id.; article 8, section 9, Constitution of Texas; and article 2368a, §§ 2, 3 and 4; and articles 1111 to 1114, inclusive, would have no application to the above warrants in the absence of an attempt to encumber said system or to create a charge thereon for the payment of said warrants in accordance with such articles.

As a general rule, a municipality may evidence its legal obligations by the issuance of nonnegotiable warrants payable in future years out of taxes levied for the purpose, without first submitting the matter to a vote of the qualified voters of the city. Simms v. City of Mt. Pleasant (Tex. Civ.App.) 12 S.W.2d 833, writ of error refused; 30 Tex.Jur. p. 406. Certain limitations upon that power are found in article 2368a, providing for publication of notice of intention to issue time warrants and requiring a referendum election thereon in the event a petition praying for such election is submitted by the necessary number of qualified voters of the city. It will be observed, however, that it is provided in section 2 of said article, that these limitations "shall not be applied to contracts for personal or for professional services, nor to work done by such county or city and paid for by the day, as such work progresses." It is obvious that the above warrants, having been issued to pay labor done on a per diem basis on work performed by the city, are not within the limitations contained in the above article, and were therefore properly issued. It follows that the trial court erred in enjoining the tax levy and the use of funds raised thereby for the payment of such warrants.

■■■■ Appellant's ninth and last assignment of error complains of the trial court's action in enjoining appellant, its officers and agents, from paying out of the general fund, or any other funds belonging to the City of Del Rio, the sum of $2,375, being the balance of attorneys' fees appropriated by the city commission of said city for the purpose of paying certain attorneys for representing Otto Koog, H. Averill, and E. F. Howard in certain criminal cases then pending against said parties. Koog and Averill are city commissioners and Howard is the city secretary of the City of Del Rio. On December 15, 1936, the city commissioners, composed of Hoog, Averill and the mayor of said city, met and adopted a resolution, reciting that the grand jurors of Val Verde county, Tex., had presented a number of indictments against Koog, Averill, and Howard, charging them with certain criminal offenses, based upon acts done by them in the bona fide discharge of their official duties as city commissioners and city secretary of said city. Thereupon, the city commissioners, by said resolution, employed certain attorneys to defend them and the city clerk against criminal prosecution upon the indictments, agreeing to pay said attorneys' fees of $4,750, to be paid out of the city's revenues, one-half of which fees was appropriated out of the city's revenues and paid to said attorneys, the balance in the sum of $2,375 to be paid at a later date.

In the case of the State of Texas ex rel. Julian La Crosse v. H. Averill & Otto Koog, 110 S.W.2d 1173, decided by this court on October 13, 1937, involving the same acts here in question, it was held that "both constitutional, statutory and charter provisions upon the subject condemn as unlawful the acts of the members of a city commission in binding the city, by ordinance and contract, to pay out public funds to attorneys or others for services rendered in behalf of such commissioners in defending them against prosecutions for offenses charged against them, either in their private or official capacity, in the courts of the land." Citing article 1, § 3, article 3, §§ 52, 53, Constitution of Texas; article 988, R.S.1925; article 373, P.C.1925; section 59, 65, 66, Charter of the City of Del Rio. Upon these authorities, the trial court did not err in its action in so far as it enjoined the payment of city funds for the defense of Averill and Koog; and, though there may be some doubt as to whether the above case is authority for upholding the trial court's action in enjoining payment of city funds for the defense of E. F. Howard, city secretary of Del Rio, who had and exercised no vote on the question, it is believed that in view of the above constitutional, statutory, and charter provisions, the trial court did not err in its action in regard to use of said funds for the defense of Howard, especially in view of the fact that the action was a temporary injunction in which the ultimate rights of the parties in the subject matter were not decided but were merely held in status quo. Williams v. De Fee (Tex.Civ. App.) 77 S.W.2d 729, 732.

■ Appellant cites the case of City of Corsicana v. Babb (Tex.Com.App.) 290 S.W. 736, in support of its contention that a city may employ counsel to defend its officials against criminal prosecutions arising out of acts done by such officials in the bona fide discharge of their official duties, and that city funds may be used for such purpose. In that case the City of Corsicana employed counsel and appropriated city funds to defend a policeman of said city against a criminal prosecution, arising out of the act of the policeman in killing one Coker, whom the policeman, in the bona fide discharge of his official duties, was attempting to arrest for violation of a law of the city. The city com-

missioners of Corsicana had no personal interest in the matter and were not disqualified, for that reason, to employ said counsel and use city funds for said defense, and it is not believed that that case is applicable to a situation, such as here involved, where the city commissioners have a direct personal interest in the contract of employment and in the use of city funds for their own defense.

Appellant cites a number of other authorities, such as 43 C.J. pp. 89, 695; Heffernan v. Walkerton, 6 Ont.L. 79; City of Moorhead v. Murphy, 94 Minn. 123, 102 N.W. 219, 68 L.R.A. 400, 110 Am.St.Rep. 345, 3 Ann.Cas. 434; Sherman v. Carr, 8 R.I. 431; State v. City of St. Louis, 174 Mo. 125, 73 S.W. 623, 61 L.R.A. 593; 83 A.L.R. p. 139. It is clear that in those authorities the commissioners, authorizing the contracts on behalf of the cities, employing counsel for the defense of city officials, or appropriating city funds to reimburse or indemnify city officers for loss sustained by reason of civil liability incurred by such officers in the bona fide discharge of their official duties, had no personal, direct or indirect, interest in the matter. Appellee attempts to further distinguish the authorities cited by appellant on the grounds that in this case, as contended by appellee, the indictments against Averill, Koog, and Howard charged them with the "commission of offenses against the city," whereby the use of city funds for such defense is adverse to any interest which the city has in the matter. Though the record does not sustain appellee's statement of fact as to the nature and character of the indictments, the record being silent thereon, it would be well to observe that if on another trial of this case it is disclosed that said indictments do charge said officials with offenses against the city, by reason of which the city is the injured party, none of the authorities cited by appellant would sustain the action of its city commissioners in employing counsel and appropriating city funds for the defense of such commissioners and city secretary against such indictments. In such a case, the city's primary object should be the enforcement of its own laws and protection of its own interest, and the interest and welfare of the public, and it should not be permitted or required to take the other side of the case, and oppose itself, to protect those who have been

charged with the violation of those laws or with conduct prejudicial to those interests. The Babb Case is evidently based upon the theory that the protection of law enforcement officers in the bona fide and good-faith discharge of their duties may be inducive to better law enforcement, resulting in a benefit to the public and therefore the use of city funds for such protection is a public purpose. In that case, however, the city was not the injured party and the city had a direct interest in promoting the enforcement of its own laws, but where the city is the injured party, as the result of the officer's acts in committing an offense against the city, it cannot be said that an appropriation of the city's funds for the defense of such officers will be inducive to better regard for the laws and rights of the city, nor is such use of city funds for a municipal purpose or for the general welfare and benefit of the public. Davis v. City of Taylor, 123 Tex. 39, 67 S.W.2d 1033; Chapman v. New York, 168 N.Y. 80, 61 N.E. 108, '56 L.R.A. 846, 85 Am.St.Rep. 661; Schieffelin v. Henry, 123 Misc. 792, 206 N.Y.S. 172, affirmed 215 App.Div. 706, 212 N.Y.S. 914; Id., 242 N.Y. 581, 152 N.E. 436; In re Jensen, 28 Misc. 378, 59 N.Y.S. 653, affirmed 44 App.Div. 509, 60 N.Y.S. 933; 44 C.J. p. 113; Hotchkiss v. Plunkett, 60 Conn. 230, 22 A. 535.

In accordance with the foregoing conclusions, the judgment of the trial court will be reversed and the injunction dissolved, in so far as the city, its officers and agents, were restrained from enforcing the tax levy and the use of tax funds raised thereby for the payment in due course of the following obligations: (1) City of Del Rio waterworks warrants in the sum of $20,000 issued to C. A. Cripe on May 28, 1935; (2) City of Del Rio waterworks warrants, Series 2, of 1935, in the sum of $25,000, issued to C. A. Cripe on September 6, 1935; (3) City of Del Rio waterworks warrants, Series of 1936, in the sum of $10,000, issued to C. A. Cripe on January 13, 1936; (4) City of Del Rio refunding bonds of 1936 in the sum of $53,000, issued under ordinance dated August 1, 1936; (5) City of Del Rio funding bonds of December 10, 1935, numbered 2 to 23, inclusive, in the aggregate sum of $22,000; (6) City of Del Rio waterworks warrants of 1936, Series 2, in the sum of $1,950; (7) City of Del Rio waterworks warrants of 1936, Series 3, in the sum of $1,950.

In all other respects the judgment of the trial court will be affirmed, at the cost of appellees.

## On Motion for Rehearing.

In appellees' motion for rehearing, the contention that article 2368a, §§ 2, 3, and 4, article 1015, subds. 30 and 43, and article 1175, subd. 11, were repealed by Acts of 1933, 43d Leg., Reg. Sess. p. 320, c. 122, articles 1111 to 1114c, inclusive, Vernon's Ann.Civ.St., and specifically by section 6 of said act, article 1114b, Vernon's Ann.Civ.St., is without merit, as there is no conflict between these statutes.

Appellees insist that the former opinion of this court is in conflict with the decision of the Commission of Appeals in Radford v. City of Cross Plains, 126 Tex. 153, 86 S.W.2d 204. In the case cited, the City of Cross Plains brought suit to cancel $67,000 of "revenue bonds" issued by it to construct improvements on its water and sewer systems. The bonds were issued in accordance with articles 1111, 1112, 1113, and 1114, except that same were not submitted to a vote of the qualified voters of the city, and the bonds "were to be paid solely from the revenues derived from the water and sewer systems of the city, and were to be secured by a mortgage upon said systems, and the income therefrom." There was no attempt in that case to comply with article 2368a, §§ 2, 3, and 4, and no provision was made for the payment of the bonds by funds raised by taxation. It is therefore apparent that the validity of those bonds depended entirely upon a compliance with articles 1111, 1112, 1113, and 1114, which distinguishes that case from the case at bar in which there was a full compliance with article 2368a, §§ 2, 3, 4, 7, and 8, except as to the $20,000 warrants issued without full compliance with the statute requiring publication of notice, but which warrants were upheld on the doctrine of estoppel.

Under article 1112, it is clear that the City of Cross Plains had no power to issue the "revenue bonds" without a vote of the qualified voters of the city, whereas in this case the City of Del Rio did have the power to issue the warrants and refunding bonds without such vote, under the provisions of article 2368a, §§ 2, 3, 4, 7, and 8, which further distinguishes this case from the Radford Case.

Appellees further contend that this court's holding that the doctrine of estoppel is applicable to the $20,000 warrants is also in conflict with the Radford Case, supra. This contention is without merit. In that case, it is clear that there was a total lack of power on the part of the City of Cross Plains to issue the bonds without a vote of its qualified voters, of which fact everyone is placed on notice, whereas in this case the power of the City of Del Rio to issue the warrants, without a vote of the people thereon, existed, though there was an irregular or improper exercise of the power conferred. As applied to the doctrine of estoppel, the distinction between total lack of power and irregular or improper exercise of power conferred, as stated in our former opinion, renders Radford v. City of Cross Plains, supra, inapplicable to the facts of this case.

The motion for rehearing is overruled.

SLATTON, J., being disqualified, did not participate in the decision of this cause, Special Associate Justice CLAUDE V. BIRKHEAD sitting in his stead.